**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO: 4:23-cv-3232 |
| v. ) | |
| ) | |
| TADANO LIMITED, ) | |
| ) | |
| TADANO FAUN GMBH, ) | |
| ) | |
| TADANO AMERICA CORPORATION, and ) | |
| ) | |
| TADANO MANTIS CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought pursuant to Sections 203, 204, and 205 of the Clean Air Act (the Act), 42 U.S.C. §§ 7522, 7523, and 7524, and the regulations promulgated pursuant to Section 213 of the Act, 42 U.S.C. § 7547, and codified at 40 C.F.R. Parts 1039 and 1068. This action seeks the assessment of civil penalties and injunctive relief against Defendants Tadano Limited ("Tadano Ltd."), Tadano Mantis Corporation ("Tadano Mantis"), Tadano Faun GmbH ("Tadano Faun"), and Tadano America Corporation ("Tadano America") (collectively "Tadano Group" or "Defendants"), for violations of the Act and regulations promulgated thereunder.

1

2.     Defendants manufactured and illegally imported, sold, offered for sale, and/or introduced, or delivered for introduction into United States commerce mobile crane nonroad vehicles (hereafter also "nonroad vehicles" or "equipment") utilizing compression-ignition engines that were neither covered by the certificates of conformity required under Sections 203(a)(1) and 213(d) of the Act, 42 U.S.C. §§ 7522(a)(1) and 7547(d), and 40 C.F.R. § 1068.101, nor exempt from that certification requirement.

3.     Manufacturers of nonroad compression-ignition engines, or nonroad vehicles utilizing such engines, must obtain a certificate of conformity valid for the model year of an engine that demonstrates that the engine complies with applicable emission standards for that model year. 40 C.F.R § 1039.255(a). Vehicles imported, sold, offered for sale, and/or introduced, or delivered for introduction into United States commerce in the calendar year (or after) in which new emissions standards become effective must contain engines that are certified to the new standards or otherwise exempt from such certification requirements. 40 C.F.R. § 1068.101.

4.     The Transition Program for Equipment Manufacturers ("TPEM") regulations provide a conditional allowance for a limited number of uncertified engines (meeting outdated emissions standards) to be introduced into United States commerce during a transition period as exempt from applicable emissions standards, provided requirements of the TPEM are met. 40 C.F.R. § 1039.625.

5.     Defendants manufactured nonroad vehicles that utilized at least two hundred and ninety (290) uncertified engines that did not meet applicable emissions standards and that Defendants represented as TPEM exempt, but that were not TPEM exempt because they exceeded the TPEM allowance or failed to comply with bonding requirements of the TPEM regulations. 40 C.F.R. §§ 1039.625 and 1039.626.

6.   Defendants also manufactured nonroad vehicles that utilized at least fifty-nine (59) uncertified engines that did not meet applicable emissions standards and did not purport to be TPEM exempt or subject to any other exemption.

7.   Defendants then imported, sold, offered for sale, and/or introduced, or delivered for introduction into United States commerce the nonroad vehicles containing these uncertified, non-compliant engines in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1) and 40 C.F.R. § 1068.101(a)(1).

8.   In addition, Defendants failed to meet annual reporting requirements for four (4) reports (reporting years 2014-2017) under the TPEM regulations, and Tadano America failed to complete at least one hundred and fifty-one (151) accurate import declaration forms required under 40 C.F.R. § 1068.301(d), in violation of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2) and 40 C.F.R. § 1068.101(a)(1).

9.   Defendants also failed to comply with "Ultra Low Sulfur Fuel Only" labeling requirements of 40 C.F.R. § 1039.135(e) in violation of Section 203(a)(4), 42 U.S.C. § 7522(a)(4), and 40 C.F.R. § 1068.101(a)(1) for at least one hundred and sixty-four (164) nonroad vehicles.

## JURISDICTION AND VENUE

10.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 204, 205, and 213(d) of the Act, 42 U.S.C. §§ 7523, 7524, and 7547(d).

11.   The Court has personal jurisdiction over Defendant Tadano America because it is headquartered in Houston, Texas and transacts business in Texas.

12.   Tadano Faun is subject to the jurisdiction of the courts of the United States for this action pursuant to its voluntary participation in the TPEM pursuant to 40 C.F.R. § 1039.626(a). The Court has personal jurisdiction over Tadano Faun pursuant to *Tex. Civ. Prac. & Rem. Code § 17.042*, because it transacts business in Texas in connection with the importation and sale of its nonroad vehicles into commerce in Texas and throughout the United States via its related (sister) corporation and distributor Tadano America. In addition, this Court's exercise of jurisdiction over Tadano Faun is consistent with due process.

13.   Tadano Ltd. is subject to the jurisdiction of the courts of the United States for this action pursuant to its voluntary participation in the TPEM pursuant to 40 C.F.R. § 1039.626(a). The Court has personal jurisdiction over Tadano Ltd. pursuant to *Tex. Civ. Prac. & Rem. Code § 17.042*, because it transacts business in Texas in connection with the importation and sale of its nonroad vehicles into commerce in Texas and throughout the United States via its subsidiary and distributor Tadano America. In addition, this Court's exercise of jurisdiction over Tadano Ltd. is consistent with due process.

14.   The Court has personal jurisdiction over Tadano Mantis pursuant to *Tex. Civ. Prac. & Rem. Code § 17.042*, because it transacts business in Texas in connection with the distribution and sale of its nonroad vehicles into commerce in Texas and throughout the United States via contractual relationships with third-party dealerships in Texas. In addition, this Court's exercise of jurisdiction over Defendant is consistent with due process.

15.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395, and Section 205 of the Act, 42 U.S.C. § 7524, because Defendants transact business in this District and because Tadano America is headquartered in this District.

**DEFENDANTS**

16.  Tadano America is incorporated under the laws of the State of Texas, and has its principal place of business at Houston, Texas.

17.  Tadano America is a wholly owned subsidiary of Tadano America Holdings, Inc., and is an indirect subsidiary of Tadano Ltd.

18.  Tadano America is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

19.  Tadano America is a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1), which includes importers.

20.  At all times relevant to this action, Tadano America was engaged in the business of importing, offering for sale, selling, and/or introducing or delivering for introduction into United States commerce nonroad vehicles manufactured by Tadano Ltd. and Tadano Faun and powered by nonroad compression-ignition engines.

21.  Tadano Faun is a company incorporated under the laws of Germany and has its principal place of business at Lauf an der Pegnitz, Germany.

22.  Tadano Faun is a wholly owned subsidiary of Tadano Ltd.

23.  Tadano Faun is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

24.  Tadano Faun is a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

25.  At all times relevant to this action, Tadano Faun was engaged in the business of manufacturing nonroad vehicles, including all-terrain cranes, powered by nonroad compression-

ignition engines that were imported, offered for sale, sold, and/or introduced or delivered for introduction into United States commerce by Tadano America.

26. Tadano Ltd. is a publicly traded company headquartered in Kagawa, Japan.

27. Tadano Ltd. is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

28. Tadano Ltd. is a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

29. At all times relevant to this action, Tadano Ltd. was engaged in the business of manufacturing nonroad vehicles, including all-terrain cranes, powered by nonroad compression-ignition engines that were imported, offered for sale, sold, and/or introduced or delivered for introduction into United States commerce by Tadano America.

30. Tadano Mantis is incorporated under the laws of the State of Tennessee and has its principal place of business at 1705 Columbia Avenue, Suite 200, Franklin, Tennessee.

31. Tadano Mantis is a wholly owned subsidiary of Tadano America Holdings, Inc., and an indirect subsidiary of Tadano Ltd.

32. Tadano Mantis is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

33. Tadano Mantis is a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

34. At all times relevant to this action, Tadano Mantis was engaged in the business of manufacturing nonroad vehicles, such as telescopic-boom crawler cranes, powered by nonroad compression-ignition engines that it offered for sale, sold, and/or introduced or delivered for introduction into United States commerce.

## STATUTORY AND REGULATORY BACKGROUND

35.    This action arises under Title II of the Act, as amended, 42 U.S.C. § 7521, *et seq*., and the regulations promulgated thereunder relating to exhaust emission standards for nonroad compression-ignition engines.

36.    The Act requires EPA to prescribe and revise standards applicable to the emission of any air pollutant from new motor vehicles or new motor vehicle engines, and nonroad vehicles or nonroad engines that, in EPA's judgment, causes or contributes to air pollution, including emissions of nitrogen oxides ($NO_x$), particulate matter (PM), and other pollutants, which may reasonably be anticipated to endanger public health or welfare. 42 U.S.C. §§ 7521(a)(1) and 7547(a).

37.    Pursuant to Section 213(d) of the Act, 42 U.S.C. § 7547(d), emission standards for nonroad engines and nonroad vehicles shall be enforced in the same manner as enforcement of emission standards for new motor vehicles or new motor vehicle engines under Section 202 of the Act, 42 U.S.C. § 7521.

38.    EPA has promulgated regulations regarding requirements and prohibitions for the manufacture and introduction into United States commerce of nonroad engines and nonroad vehicles at 40 C.F.R. Parts 1039 (Control of Emissions from New and In-use Nonroad Compression-Ignition Engines) and 1068 (General Compliance provisions for Highway, Stationary, and Nonroad Programs).

**Certificates of Conformity**

39.    Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), prohibits manufacturers of nonroad vehicles using compression-ignition engines from selling, offering for sale, introducing or delivering for introduction into United States commerce, or (in the case of any person)

importing into the United States (or causing any of the foregoing with respect to) any nonroad vehicles unless the engine contained therein is covered by a certificate of conformity issued by EPA under regulations prescribed by the Act. *See* 42 U.S.C. § 7547(d).

40.   The certification process allows EPA to ensure that every nonroad compression-ignition engine introduced into United States commerce satisfies applicable emission standards.

41.   To obtain a certificate of conformity, an engine manufacturer must submit an application for a certificate of conformity to EPA for each nonroad engine family, as determined under 40 C.F.R. § 1039.230, and every model year that it intends to manufacture, sell, offer for sale, introduce, or deliver for introduction into United States commerce, or import into the United States. The certificate of conformity application must include, among other things, identification of the covered engine family, a description of the nonroad engines and their emission control system, and test results from a test engine or engines showing that the engine family satisfies applicable emissions standards. 40 C.F.R. §§ 1039.201 and 1039.205.

42.   If, after review of the certificate of conformity application and other information, EPA determines that the test engine or engines described in the certificate of conformity application meet(s) the requirements of the Act, EPA will issue a certificate of conformity for the nonroad engine family for that model year. 40 C.F.R. § 1039.255.

43.   The provisions of 40 C.F.R. Part 1068 apply to land-based nonroad compression-ignition engines that are subject to the provisions of 40 C.F.R. Part 1039 and 40 C.F.R. § 1068.1(a)(6).

44.   Under the regulations, manufacturers of "equipment" (as relevant here nonroad vehicles) must "not sell, offer for sale, or introduce or deliver into commerce in the United States or import into the United States any new engine/equipment after emission standards take effect

8

for the engine/equipment, unless it is covered by a valid certificate of conformity for its model year and has the required label or tag." 40 C.F.R. § 1068.101(a)(1). Manufacturers of nonroad equipment also "must not take any such actions [ ] with respect to any equipment containing an engine subject to [Part 1068's] provisions unless the engine is covered by a valid certificate of conformity for its model year and has the required engine label or tag." *Id*. "[A] valid certificate of conformity is one that applies to the same model year as the model year of the equipment (except as allowed by 40 C.F.R. § 1068.105(a)). 40 C.F.R. § 1068.101(a)(1)(i).

45. For purposes of Title II of the Act, Emissions Standards for Moving Sources, "[t]he term 'manufacturer' as used in sections 7521, 7522, 7525, 7541, and 7542 of this title means any person engaged in the manufacturing or assembling of new motor vehicles, new motor vehicle engines, new nonroad vehicles or new nonroad engines, or importing such vehicles or engines for resale, or who acts for and is under the control of any such person in connection with the distribution of new motor vehicles, new motor vehicle engines, new nonroad vehicles or new nonroad engines, but shall not include any dealer with respect to new motor vehicles, new motor vehicle engines, new nonroad vehicles or new nonroad engines received by him in commerce." 42 U.S.C. § 7550(1). The regulations at 40 C.F.R. § 1068.30 state that "*Manufacturer* has the meaning given in Section 216(1) of the Clean Air Act (42 U.S.C. 7550(1)). In general, this term includes any person who manufactures or assembles an engine or piece of equipment for sale in the United States or otherwise introduces a new engine or piece of equipment into U.S. commerce. This includes importers that import new engines or new equipment into the United States for resale."

**The Tier 4 Emissions Standards**

46. EPA has promulgated, and from time to time revised, emissions standards for nonroad compression-ignition engines. *See* 40 C.F.R. Parts 89 and 1039. These standards are referred to with a "Tier" designation.

47. In 2004, EPA adopted more stringent standards (referred to as "Tier 4 standards") intended for use in nonroad vehicles using compression-ignition engines to achieve significant reductions in particulate matter, nitrogen oxides, and sulfur oxides. To meet Tier 4 standards, equipment manufacturers across power categories generally must modify their equipment designs to accommodate engines with additional and improved emissions control devices. 69 Fed. Reg. 38,958 (June 29, 2004) (codified at 40 C.F.R. Part 1039); *see also* 40 C.F.R. § 1039.101.

48. Tier 4 standards were set in two phases, Tier 4i (interim) and Tier 4f (final). As relevant here, Tier 4i became effective for engines with power between 130 and 560 kilowatts (kW) (hereinafter "$130 \leq kW \leq 560$") on January 1, 2011, and Tier 4f became effective for such engines on January 1, 2014. 40 C.F.R. §§ 1039.101 and 1039.102. Tier 4i became effective for engines with power between 56 and 130 kW (hereinafter "$56 \leq kW < 130$") on January 1, 2012, and Tier 4f became effective for such engines on January 1, 2014. 40 C.F.R. §§ 1039.101 and 1039.102. Tier 4i became effective for engines with power between 19 and 56 kW (hereinafter "$19 \leq kW < 56$") on January 1, 2008, and Tier 4f became effective for such engines on January 1, 2014. 40 C.F.R. §§ 1039.101 and 1039.102.

49. Vehicles introduced into United States commerce in the calendar year (or after) in which Tier 4 standards became effective must contain engines certified to the new Tier 4 standards, except that equipment manufacturers may "continue to use up normal inventories of

10

engines that were built before" Tier 4 standards became effective. 40 C.F.R. §§ 1068.101(a) and 1068.105(a).

**Transition Program for Equipment Manufacturers**

50.    EPA adopted transition provisions for equipment manufacturers to provide flexibility for these manufacturers to selectively delay compliance with the Tier 4 standards for a limited number of units for up to seven years, subject to certain requirements. This Transition Program for Equipment Manufacturers is known as the TPEM. 40 C.F.R. § 1039.625.

51.    Under the TPEM, equipment manufacturers are allowed to produce and introduce into commerce in the United States a limited number of nonroad vehicles utilizing engines that have not been certified to the applicable Tier 4 emissions standards only if they comply with all TPEM requirements of 40 C.F.R. § 1039.625. Thus, under the TPEM, equipment manufacturers may, subject to requirements, continue to introduce into United States commerce vehicles containing a limited number of "exempt" engines that would otherwise be uncertified to Tier 4 standards.

52.    Equipment manufacturers may qualify for exemptions under the TPEM based either on a percentage of their production allowance or a maximum number of exempted pieces of equipment (small volume allowance), and they may choose either option for a particular power category. 40 C.F.R. § 1039.625(b)(1)-(2).

53.    Under the small-volume provision, equipment manufacturers are provided an allowance for a specific number of exempted engines depending on the engine power category and whether the engines are from a single engine family or multiple engine families. 40 C.F.R. § 1039.625(b)(2). For engines at or above 130 kW equipment manufacturers may produce for introduction into United States commerce up to a total of 350 units with exempted engines

11

during the seven-year period specified for that particular power category, with no more than 100 units in any single year. For engines with power below 130 kW equipment manufacturers may produce for introduction into United States commerce up to a total of 525 units with exempted engines within a power category during the seven-year period specified for that particular power category , with no more than 150 units in any single year. Under this approach, exemptions may apply to engines from multiple engine families in a given year. 40 C.F.R. § 1039.625(a), (b)(2)(ii).

54. The limit on TPEM-exempted engines ("TPEM allowance") for a power category applies to all U.S.-directed sales of an equipment manufacturer, including those from any parent or subsidiary companies and any other companies the manufacturer licenses to produce equipment for it. 40 C.F.R. § 1039.625(a). Thus, when determining an equipment manufacturer's TPEM allowance, a parent, and its subsidiary companies, as defined at 40 C.F.R. § 1068.30, and licensed companies share one set of allowances among them for U.S.-directed sales.

55. Before an equipment manufacturer utilizing engines not certified to Tier 4 standards may begin using the TPEM exemption, it must notify EPA of its intent to do so and provide information about its intended use of the TPEM exemptions, including an estimate of the number of engines in each power category it plans to produce and whether it intends to use the percent-of-production or small volume allowance approach to determine its TPEM allowance. 40 C.F.R. § 1039.625(g).

56. To be eligible to use the TPEM allowances, the equipment manufacturer must follow all of the requirements of 40 C.F.R. §§ 1039.625 and 1039.626. An engine or vehicle that is purportedly exempt from the Act's certification requirement under the TPEM is not in fact

exempt if the engine or equipment manufacturer fails to comply with the detailed TPEM requirements.

57.   Once the equipment manufacturer has used up its TPEM allowance, any additional vehicles that it sells, offers for sale, introduces, or delivers into United States commerce that contain engines not certified to currently applicable Tier 4 standards violate the prohibition of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1) and 40 C.F.R. §§ 1068.101(a)(1) and 1039.625(i).

**Normal Existing Inventory**

58.   Even after the Tier 4 standards are effective, equipment manufacturers may "continue to use up normal inventories of engines that were built before" Tier 4 standards became effective. 40 C.F.R. § 1068.105(a) provides in part: "If new engine-based emission standards apply in a given model year, your equipment produced in that calendar year (or later) must have engines that are certified to the new standards, except that you may continue to use up normal inventories of engines that were *built before the date of the new or changed standards*. For purposes of this paragraph (a), normal inventory applies for *engines you possess and engines from your engine supplier's normal inventory*." (Emphasis added).

59.   Normal inventories of engines under 40 C.F.R. § 1068.105(a) are considered compliant engines (even though they may not be certified to current emission standards in effect) and not included in the equipment manufacturer's TPEM allowances. 40 C.F.R. § 1039.625(d)(1).

60.   Equipment manufacturers are specifically prohibited from circumventing the certification requirement by stockpiling engines that were built before Tier 4 standards took

effect or by knowingly installing engines that were stockpiled by engine suppliers in violation of 40 C.F.R. §§ 1068.101(a), 1068.103(g) and 1068.105(a).

61.   Equipment manufacturers who, after the effective date of the Tier 4 standards, introduce into United States commerce vehicles containing engines not certified to the Tier 4 standards and not part of the equipment manufacturers' normal inventories, are liable for violations of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1) and 40 C.F.R. § 1068.101(a), unless the vehicles are within the TPEM exemption.

**TPEM Equipment Labeling Requirements**

62.   Section 203(a)(4)(A) of the Act, 42 U.S.C. § 7522(a)(4)(A), and the regulations at 40 C.F.R. § 1068.101(a)(1), prohibit any manufacturer of a new nonroad engine or vehicle to sell such engine or vehicle unless a label or tag is permanently affixed to such engine and vehicle in accordance with Section 207(c)(3)(C) of the Act, 42 U.S.C. § 7541(c)(3)(C). Section 207(c)(3)(C) requires manufacturers of engines and vehicles to permanently affix to each engine and vehicle a label or tag indicating such engine or vehicle is covered by a certificate of conformity as well as provide any other information prescribed by regulation.

63.   The TPEM regulations at 40 C.F.R. § 1039.625(f) further require equipment manufacturers to label each vehicle produced using a TPEM engine with specified information that supplements the engine emission control label or tag. The label must be permanently affixed (attached in such a manner that it cannot be removed without destroying or defacing it in accordance with 40 C.F.R. § 1068.45(a)) and, in addition to other information, state that "*THIS EQUIPMENT [or identify the type of equipment] HAS AN ENGINE THAT MEETS U.S. EPA EMISSION STANDARDS UNDER 40 CFR. 1039.625.*" 40 C.F.R. § 1039.625(f).

64.   A vehicle that is not permanently labeled in accordance with the TPEM labeling requirements of 40 C.F.R. § 1039.625(f), is not eligible for exemption under the TPEM. 40 C.F.R. § 1039.625.

**TPEM Importation Bond Posting Requirement**

65.   Foreign equipment manufacturers seeking to use the TPEM provisions of 40 C.F.R. § 1039.625 for vehicles manufactured outside of the United States for introduction into United States commerce must meet additional criteria found at 40 C.F.R. § 1039.626 to be eligible for TPEM allowances. Among these criteria, foreign equipment manufacturers must post a specified import bond to cover any potential enforcement actions under the CAA before it or anyone else imports its vehicles under the TPEM. 40 C.F.R. § 1039.626(a)(9).

66.   A foreign equipment manufacturer's failure to post a bond for imported vehicles in compliance with 40 C.F.R. § 1039.626(a)(9) disqualifies the unbonded vehicles from the TPEM allowance. 40 C.F.R. § 1039.626.

**TPEM Reporting Requirements**

67.   Section 213(d) of the Act, 42 U.S.C. § 7547(d), states that standards established for nonroad engines and vehicles are subject to, *inter alia*, the provisions of Section 208(a) of the Act, 42 U.S.C. § 7542(a). Section 208(a) requires that persons subject to Part A or C of Title II of the Act (including Sections 203 and 213 of the Act, 42 U.S.C. §§ 7522 and 7547) establish and maintain records, perform certain testing, make reports, and provide information that EPA may reasonably require to determine whether such persons have acted or are acting in compliance with the Act.

68.   Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), prohibits any person from failing or refusing to permit access to or copying of records or failing to make reports or

15

provide information required under Section 208 of the Act. EPA's implementing regulations provide that engine and equipment manufacturers must give EPA "complete and accurate reports and information without delay" as required by regulations. 40 C.F.R. § 1068.101(a)(2).

69.    The TPEM regulations require an equipment manufacturer (defined to include a parent and its subsidiaries) using TPEM allowances to submit to EPA an annual report to verify that the manufacturer is not exceeding its annual or total TPEM allowance. 40 C.F.R. § 1039.625(g)(2). The annual report must be submitted by March 31 of the year following a year a manufacturer used TPEM allowances, and the report must identify: (i) the total count of units the manufacturer sold in the preceding year for each power category based on actual U.S.-directed production information; and (ii) the percentages of U.S.-directed production that correspond to the number of units in each power category and the cumulative numbers and percentages of units for all the units that the manufacturer has sold pursuant to TPEM for each power category. *Id*.

**EPA Declaration Form 3520-21 Requirements**

70.    Importers of equipment containing engines subject to EPA emission standards are required to complete the appropriate EPA declaration form before importing any engines or vehicles into the United States. 40 C.F.R. § 1068.301(d). EPA has created Declaration Form 3520-21 for this purpose. Importers are required to complete (and retain a copy of) the declaration form before importing equipment containing the covered engines.  In addition to requisite information regarding the engines being imported, Declaration Form 3520-21 directs importers to indicate on the form whether the engine is subject to exemption under the TPEM.

71.    An importer's failure to comply with Declaration Form 3520-21 requirements for imported vehicles with regulated engines is a violation of Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), and 40 C.F.R. § 1068.101(a)(2).

16

**Fuel Inlet Labeling Requirements**

72.   EPA regulations require that equipment containing new, compression-ignition nonroad engines with model years between 2011 and 2019 (inclusive) have a permanently attached label near the fuel inlet with the statement "Ultra Low Sulfur Fuel Only." 40 C.F.R. § 1039.135(e) (2021) ("ultra low sulfur fuel only" label required for model years 2019 and earlier) and 40 C.F.R. § 1039.135(e) (2007-2020) ("ultra low sulfur fuel only" label required except as provided in 40 C.F.R. § 1039.104(e)(2), which contains label requirements for 2010 and earlier model years). *See also* 40 C.F.R. § 1039.104(e) ("For diesel-fueled engines in 2011 and later model years, the diesel test fuel is ultra low-sulfur diesel fuel specified in 40 CFR part 1065"); 69 Fed. Reg. 38,959, 39,037 (June 29, 2004) ("In general, beginning in model year 2011, nonroad engines will be required to use the Ultra Low Sulfur diesel fuel … Thus, the default label will state "ULTRA LOW SULFUR FUEL ONLY.""); 86 Fed. Reg. 34,308, 34,345 (June 29, 2021) (amending 40 C.F.R. §1039.135(e) to stop requiring the "ultra low sulfur fuel only" fuel inlet labels after model year 2019 "[s]ince in-use diesel fuel for these engines must universally meet [ultra low sulfur diesel] requirements, there is no longer a benefit to including this label information").

**Enforcement Mechanisms**

73.   The United States Department of Justice has authority to bring this action on behalf of the EPA Administrator under 28 U.S.C. §§ 516 and 519, Sections 204(b), 205(b), and 305(a) of the Act, 42 U.S.C. §§ 7523(b), 7524(b), and 7605(a), and 40 C.F.R. § 1068.125.

74.   Section 213(d) of the Act, 42 U.S.C. § 7547(d), provides that regulations applicable to nonroad engines shall be enforced in the same manner as the standards for new motor vehicles and new motor vehicle engines. The standards for new motor vehicles and new

17

motor vehicle engines (and hence, nonroad vehicles and engines) are enforced pursuant to Sections 203 (Prohibited Acts), 204 (Actions to Restrain Violations), and 205 (Civil Penalties), 42 U.S.C. §§ 7522, 7523, and 7524.

75. Section 204(b) of the Act, 42 U.S.C. § 7523(b), authorizes the United States to bring a civil action to restrain violations of 42 U.S.C. §7522(a). The regulations at 40 C.F.R. § 1068.125 authorize a civil action to enjoin and restrain violations of 40 C.F.R. § 1068.101.

76. Section 205(b) of the Act, 42 U.S.C. § 7524(b), authorizes the EPA Administrator to bring a civil action to assess and recover civil penalties for violations of Section 203(a)(1), (a)(2), or (a)(4) of the Act, 42 U.S.C. § 7522(a)(1), (a)(2), or (a)(4), or Section 213(d) of the Act, 42 U.S.C. § 7547(d). The regulations at 40 C.F.R. §§ 1068.101(a) and 1068.125 authorize a civil action to assess and recover civil penalties for violations of § 1068.101.

77. Section 205(a) of the Act, 42 U.S.C. § 7524(a), authorizes civil penalties of up to $25,000 per vehicle or engine for each violation of Section 203(a)(1) or (a)(4) of the Act, 42 U.S.C. §§ 7522(a)(1) or (a)(4), and civil penalties of up to $25,000 per day of violation for each violation of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2). *See also* 40 C.F.R. § 1068.101.

78. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101–410, 104 Stat. 890 (codified as amended at 28 U.S.C. § 2461 note), EPA increased the amount of civil penalties to $37,500 per engine or per day for each violation of Section 203(a)(1), (a)(2), or (a)(4) of the Act, 42 U.S.C. § 7522(a)(1), (a)(2), or (a)(4), occurring on and after January 13, 2009 through November 2, 2015, and up to $55,808 per engine or per day for each violation occurring after November 2, 2015, and assessed on or after January 6, 2023. 40 C.F.R. §§ 19.4 and 1068.101(a)(1) and (a)(2).

**GENERAL ALLEGATIONS**

**Uncertified Engines and Exceedances of TPEM Exemption Allowance**

79.    Defendants are related entities in the business of manufacturing and selling nonroad vehicles.

80.    During the period July 2013 through 2017 (hereafter "the relevant period"), Tadano Ltd. and Tadano Faun each manufactured nonroad vehicles overseas containing compression-ignition engines they acquired from third-party suppliers in the power categories $130 \leq kW \leq 560$ and $56 \leq kW < 130$ that were not compliant with the Tier 4 emission standards then in effect. For power category $130 \leq kW \leq 560$ Tier 4i emission standards were applicable since January 1, 2011, and Tier 4f emission standards were applicable since January 1, 2014. For power category $56 \leq kW < 130$ Tier 4i emission standards were applicable since January 1, 2012, and Tier 4f emission standards were applicable since January 1, 2014. Tadano Ltd. and Tadano Faun then each sold, offered for sale, introduced, or delivered for introduction into United States commerce, or imported into the United States (or caused the foregoing with respect to), those nonroad vehicles into the United States through their affiliate Tadano America which is a distributor of the nonroad vehicles.

81.    During the relevant period, Tadano America imported nonroad vehicles manufactured overseas by Tadano Ltd. and Tadano Faun, containing noncompliant engines, and then sold, offered for sale, introduced, or delivered for introduction into commerce in the United States (or caused such acts) these nonroad vehicles.

82.    During the relevant period, Tadano Mantis manufactured nonroad vehicles in the United States containing compression-ignition engines acquired from third party suppliers in the power category $130 \leq kW \leq 560$ that were not compliant with the Tier 4 emission standards then

19

in effect (Tier 4i emission standards applicable since January 1, 2011, or Tier 4f emission standards applicable since January 1, 2014). Tadano Mantis then sold, offered for sale, introduced, or delivered for introduction into commerce in the United States (or caused such acts) these nonroad vehicles.

83.   During the relevant period, Defendants manufactured sold, offered for sale, introduced or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing with respect to) nonroad vehicles utilizing compression-ignition engines in the $130 \leq kW \leq 560$ power category and in  the $56 \leq kW < 130$ power category that were neither covered by an EPA-issued certificate of conformity valid for the applicable model year nor otherwise exempt from the Act's certification requirement.

84.    Under the TPEM regulations, the Tadano Group (comprised of the Defendants as related parent and subsidiary corporations) constitutes one manufacturer for allowance and reporting purposes and could qualify for the TPEM exemption based on a percent of its production allowance or a small volume allowance for any particular power category. All U.S.-directed sales of equipment manufactured by the Defendants were subject to the same, single TPEM exemption allowance for the Tadano Group under 40 C.F.R. § 1039.625(a) which provides: "Consider all U.S.-directed equipment sales in showing that you meet the requirements of this section, including those from any parent or subsidiary companies and those from any other companies you license to produce equipment for you."

85.   On October 21, 2010, Tadano Ltd. submitted to EPA a notice of its intent to use the TPEM small volume allowance to import vehicles with engines lacking a current certificate of conformity in the $130 \leq kW \leq 560$ power category in calendar years 2011 through 2017. On September 29, 2011, Tadano Ltd. submitted to EPA a notice of its intent to use the TPEM small

volume allowance to import vehicles with engines lacking a current certificate of conformity in the $56 \leq kW < 130$ power category in calendar years 2012 through 2018.

86. On November 9, 2010, Tadano Mantis submitted a notice of its intent to use the TPEM small volume allowance to introduce into United States commerce vehicles with engines lacking a current certificate of conformity in calendar year 2011.

87. On November 30, 2011, Tadano Faun submitted a notice of its intent to use the TPEM small volume allowance to import vehicles with engines lacking a current certificate of conformity in the $130 \leq kW \leq 560$ power category in calendar years 2011 through 2017. On November 30, 2011, Tadano Faun submitted a notice of its intent to use the TPEM small volume allowance to import vehicles with engines lacking a current certificate of conformity in the $56 \leq kW < 130$ power category in calendar years 2012 through 2018.

88. During the relevant period, Tadano Group used multiple engine families (a grouping of engines that are expected to have similar emission characteristics throughput their useful life as described in 40 C.F.R. § 1039.230) in the $130 \leq kW \leq 560$ power category. Therefore, under the small volume allowance chosen by Tadano Group, Tadano Group was subject to a total production limit of 350 TPEM-exempted engines in the power category during a seven-year period and an annual limit of 100 TPEM-exempted engines, as provided under 40 C.F.R. § 1039.625(b)(2). Additionally, under the small volume allowance chosen by Tadano Group for engines in the $56 \leq kW < 130$ power category, Tadano Group was subject to a total production limit of 525 TPEM-exempted engines within the power category during the seven-year period, and an annual limit of 150 TPEM exempted engines, as provided under 40 C.F.R. § 1039.625(b)(2).

89.   Subject to an opportunity for further discovery and investigation, during the relevant period, Tadano Ltd. and Tadano Faun each manufactured and sold, offered for sale, introduced or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing) through their affiliate Tadano America nonroad vehicles containing engines Defendants represented as TPEM exempt that did not have certificates of conformity showing compliance with emissions standards applicable to their model year, and that exceeded Tadano Group's total TPEM allowance and were not otherwise exempt from the Act's certification requirements. Specifically: Tadano Ltd. manufactured and through Tadano America imported at least one hundred (100) engines that Defendants represented as TPEM exempt but were in excess of Tadano Group's total TPEM allowance. Tadano Faun manufactured and through Tadano America imported at least seventy (70) engines that Defendants represented as TPEM exempt but were in excess of Tadano Group's total TPEM allowance.

90.   Subject to an opportunity for further discovery and investigation, during the relevant period, Tadano America imported and sold, offered for sale, and introduced or delivered for introduction into United States commerce (or caused the foregoing) nonroad vehicles manufactured overseas by Tadano Ltd. and Tadano Faun containing at least one hundred and seventy (170) engines Defendants represented as TPEM exempt that did not have certificates of conformity showing compliance with emissions standards applicable to their model year, and that exceeded TPEM allowances and were not otherwise exempt from the Act's certification requirements.

91.   Subject to an opportunity for further discovery and investigation, during the relevant period, Tadano Mantis sold, offered for sale, and introduced or delivered for introduction into United States commerce (or caused the foregoing with respect to) nonroad vehicles utilizing at

22

least forty (40) engines Defendants represented as TPEM exempt that did not have certificates of conformity showing compliance with emissions standards applicable to their model year, and that exceeded Tadano Group's total TPEM allowance and were not otherwise exempt from the Act's certification requirements.

92. Subject to an opportunity for further discovery and investigation, since at least July 10, 2013, Defendants sold, offered for sale, and introduced or delivered for introduction into United States commerce or imported into the United States (or caused any of the foregoing), at least two hundred and ten (210) such engines Defendants represented as TPEM exempt that were in excess of Tadano Group's total TPEM allowance of 350 engines for the $130 \leq kW \leq 560$ power category. 40 C.F.R. § 1039.625(b)(2).

93. Subject to an opportunity for further discovery and investigation, Defendants also exceeded the Tadano Group's TPEM annual allowance of 100 engines for the $130 \leq kW \leq 560$ power category in 2013 and 2014. 40 C.F.R. § 1039.625(b)(2).

94. Subject to an opportunity for further discovery and investigation, Defendants sold, offered for sale, and introduced or delivered for introduction into United States commerce or imported into the United States (or caused any of the foregoing), nonroad vehicles containing at least fifty-nine (59) additional engines in the $130 \leq kW \leq 560$ power category not certified to Tier 4 standards without claiming any exemption. Specifically: Tadano Ltd. manufactured and through Tadano America imported fifty-two (52) nonconforming engines not certified to Tier 4 standards without any claimed exemption. Tadano Faun manufactured and through Tadano America imported six (6) nonconforming engines not certified to Tier 4 standards without any claimed exemption. Tadano Mantis manufactured and sold one (1) nonconforming engine not certified to Tier 4 standards without any claimed exemption.

23

**Failure to Comply with TPEM Bonding Requirements**

95.   During the relevant period, Defendants Tadano Ltd. and Tadano Faun also imported nonroad vehicles containing engines in the $56 \leq kW < 130$ power category that Defendants represented as TPEM-exempt. Defendant Tadano Ltd. failed to post an import bond, as required by 40 C.F.R. § 1039.626(a)(9), for at least fifty (50) nonroad vehicles containing such engines that Defendant represented as TPEM exempt and imported into the United States (or caused the import thereof). Defendant Tadano Faun failed to post an import bond, as required by 40 C.F.R. § 1039.626(a)(9), for at least thirty (30) nonroad vehicles containing such engines that Defendant represented as TPEM exempt and imported into the United States (or caused the import thereof).

96.   Defendants' failure to comply with the bonding requirements when importing a TPEM-exempt engine under 40 C.F.R. § 1039.626 disqualifies each unbonded $56 \leq kW < 130$ power category engine from TPEM-exempt status under 40 C.F.R. § 1039.625.

97.   Each engine that was sold, offered for sale, introduced, or delivered for introduction into commerce, or imported into the United States, during the relevant period that was not covered by an EPA-issued certificate of conformity valid for the applicable model year, and that was in excess of the TPEM allowance, that had no TPEM label, or that did not meet TPEM bonding requirements, was not exempt from the Act's certification requirement.

98.   Defendants sold, offered for sale introduced, or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing), nonroad vehicles utilizing nonexempt engines in violation of certification requirements under Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

24

**Failure to Comply with Annual Reporting and Import Declaration Requirements**

99.    Additionally, Defendants failed to submit complete and accurate annual TPEM reports due in March 2014, March 2015, March 2016, and March 2017 pursuant to 40 C.F.R. § 1039.625(g)(2) concerning Defendants' actual U.S.-directed production volume and TPEM-exempted equipment, in violation of Sections 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2), and 40 C.F.R. § 1068.101(a)(2).

100.  During the period 2014-2017, only Tadano Mantis submitted TPEM annual reports, but those reports were incomplete, covering sales only of its own manufactured equipment and did not reflect the total count of TPEM allocations used by the Tadano Group for the $130 \leq kW < 560$ power category in a given year or in the aggregate.

101.  Also, since at least July 10, 2013, on at least one hundred and fifty-one (151) occasions, Tadano America failed complete and retain accurate EPA Declaration Form 3520-21s identifying imported equipment that contained uncertified engines subject to the TPEM exemption, as required under 40 C.F.R. § 1068.301(d).

**Fuel Inlet Labeling Violations**

102.  Defendants also manufactured at least one hundred and sixty-four (164) nonroad vehicles that lacked the "Ultra Low Sulfur Fuel Only" fuel inlet labeling required by 40 C.F.R. § 1039.135(e). Specifically: Tadano Ltd. manufactured at least sixty-one (61) vehicles that lacked the required fuel inlet labeling. Tadano Mantis manufactured one hundred and at least three (103) vehicles that lacked the required fuel inlet labeling.

103.  From approximately June 2014 to December 2018, Defendants imported, sold, offered for sale, and/or introduced into commerce in the United States each of these unlabeled

25

nonroad vehicles in violation of Section 203(a)(4) of the Act, 42 U.S.C. § 7522(a)(4), and 40 C.F.R. § 1068.101(a)(1).

## FIRST CLAIM FOR RELIEF

**(Violations of Section 203(a)(1) of the Act and 40 C.F.R. § 1068.101(a): Uncertified Engines)**

104.  Paragraphs 1 through 103 are incorporated by reference.

105.  Defendants are "manufacturers" of new nonroad vehicles or new nonroad engines within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

106.  Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing), nonroad vehicles containing at least two hundred and ten (210) compression-ignition engines in the $130 \leq kW \leq 560$ power category not certified to the applicable Tier 4f standards that Defendants represented as TPEM exempt from those standards, but which exceeded Defendants' TPEM exemption allowance and were not otherwise subject to any exemption.

107.  Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing), nonroad vehicles containing at least another fifty-nine (59) compression-ignition engines, at least four (4) of which were in the $56 \leq kW < 130$ power category and at least fifty-five (55) of which were in the $130 \leq kW \leq 560$ power category), that were not certified to the applicable Tier 4f standards and were not represented as TPEM exempt nor otherwise subject to any exemption.

108.  Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing) at least eighty (80) nonroad vehicles with engines in the $56 \leq kW < 130$ power category not

certified to the Tier 4 standards that Defendants represented as TPEM exempt, but that did not comply with the TPEM bonding requirements applicable to imported Tadano Ltd. and Tadano Faun TPEM nonroad vehicles with nonconforming engines, and hence, were not TPEM exempt nor subject to any exemption.

109.  Pursuant to 42 U.S.C. § 7524(a), each Defendant's sale, offering for sale, introduction or delivery for introduction into United States commerce, or importation into the United States (or causing any of the foregoing) of each engine or nonroad vehicle utilizing such engine (or engines) that was not covered by a valid certificate of conformity nor otherwise exempt from the Act's certification requirements constitutes a separate violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1) and 40 C.F.R. § 1068.101(a)(1).

110.  Defendants' violations of the Act and 40 C.F.R. § 1068.101 have caused harm to public health and the environment because the noncompliant engines imported and introduced into United States commerce have contributed greater emissions of NOx and PM to the atmosphere than would engines certified to the applicable model year Tier 4 standards.

111.  Defendants are each liable for injunctive relief and civil penalties of up to $37,500 per engine for each of their violations of the Act identified in the preceding paragraphs occurring between January 13, 2009, and November 2, 2015, and injunctive relief and civil penalties of up to $55,808 per engine for each violation occurring after November 2, 2015, and assessed after January 6, 2023. 42 U.S.C. §§ 7523(a) and 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(1).

## SECOND CLAIM FOR RELIEF

**(Violations of Section 203(a)(2) of the Act and 40 C.F.R. § 1068.101(a):
Incomplete TPEM Annual Reports)**

112.  Paragraphs 1 through 103 are incorporated by reference.

27

113.  Defendants were required to file annual TPEM reports by March 31, 2014, March 31, 2015, March 31, 2016, and March 31, 2017, identifying all prior calendar year unit sales of nonroad vehicles utilizing TPEM exempt engines in United States commerce, total cumulative sales of nonroad vehicles utilizing TPEM exempt engines, and the manufacturer of such engines if different than the reporting party, as provided in 40 C.F.R. § 1039.625(g)(2).

114.  Defendants failed to timely submit or accurately disclose the Tadano Group's total sales of nonroad vehicles utilizing uncertified engines and TPEM exempt engines in annual TPEM reports due in 2014, 2015, 2016, and 2017. Defendants' failures to provide timely, complete, and accurate information in annual reports constitutes violations of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2), and 40 C.F.R. § 1068.101(a)(2).

115.  Defendants are each liable for civil penalties of up to $37,500 for each day Defendants were in violation of the reporting requirements identified in the preceding paragraph occurring between January 13, 2009, and November 2, 2015, and up to $55,808 per day occurring after November 2, 2015, and assessed after January 6, 2023. 42 U.S.C. § 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(2).

## THIRD CLAIM FOR RELIEF

### (Violations of Section 203(a)(2) of the Act and 40 C.F.R. § 1068.101(a): TPEM Import Form Requirements)

116.  Paragraphs 1 through 103 are incorporated by reference.

117.  Between approximately August 1, 2013, and approximately August 27, 2015, Tadano America imported nonroad vehicles manufactured by Tadano Ltd. containing noncompliant engines for which Defendants have claimed TPEM exemption under 40 C.F.R. § 1039.625, but Tadano America failed to identify such engines as TPEM exempt on at least

28

ninety-six (96) EPA Declaration Form 3520-21s that it completed  as required under 40 C.F.R. § 1068.301(d).

118.   Between approximately October 21, 2013, and approximately October 20, 2016, Tadano America imported nonroad vehicles manufactured by Tadano Faun containing uncertified engines for which Defendants have claimed TPEM exemption under 40 C.F.R. § 1039.625, but Tadano America failed to identify the uncertified engines as TPEM exempt on at least fifty-five (55) EPA Declaration Form 3520-21s that it completed  as required under 40 C.F.R. § 1068.301(d).

119.   Each failure by Tadano America to properly complete the importation reporting requirements in EPA Declaration Form 3520-21s for a TPEM engine as required under 40 C.F.R. § 1068.301(d) is a violation of Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), and 40 C.F.R. § 1068.101(a)(2), for which Tadano America is liable for civil penalties of up to $37,500 for each day of violation occurring between January 13, 2009 and November 2, 2015, and up to $55,808 per day occurring after November 2, 2015, and assessed after January 6, 2023. 42 U.S.C. § 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(2).

## FOURTH CLAIM FOR RELIEF

### (Violations of Section 203(a)(4) of the Act and 40 C.F.R. § 1039.135(e): Fuel Inlet Labeling Requirements)

120.   Paragraphs 1 through 103 are incorporated by reference.

121.   Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing), at least one hundred and sixty-four (164) nonroad vehicles that lacked the "Ultra Low Sulfur Fuel

29

Only" fuel inlet labeling required by 40 C.F.R. § 1039.135(e) (applicable to  model years 2011 through 2019).

122.  Pursuant to 42 U.S.C. § 7524(a), each Defendant's sale, offering for sale, introduction, or delivery for introduction into United States commerce, or importation into the United States (or causing any of the foregoing), of each mislabeled nonroad vehicle constitutes a separate violation of Section 203(a)(4) of the Act, 42 U.S.C. § 7522(a)(4)(A), and 40 C.F.R. § 1068.101(a)(2).

123.  Each failure by a Defendant to properly label nonroad vehicles as required under 40 C.F.R. § 1039.135(a) is a violation of Section 203(a)(4)(A) of the Act, 42 U.S.C. § 7522(a)(4)(A), and 40 C.F.R. § 1068.101(a)(2), for which such Defendant is liable for civil penalties of up to $37,500 per engine for each violation occurring between January 13, 2009, and November 2, 2015, and up to $55,808 per engine for each violation occurring after November 2, 2015, and assessed after January 6, 2023. 42 U.S.C. § 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(1).

### PRAYER FOR RELIEF

Wherefore, the United States requests that this Court:

a.  Assess civil penalties against Defendants for their violations as provided for in the Act;

b.  Order Defendants to take appropriate steps, including, but not limited to, mitigation of excess NOx and PM emissions, to remedy the violations of Section 203(a)(1) of the Act and 40 C.F.R. § 1068.101(a)(1) alleged above;

c.  Award the United States its costs in this action; and

d.  Grant such other relief as this Court deems just and proper.

Respectfully Submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

KENNETH G. LONG
Senior Attorney
D.C. Bar No. 414791
Environmental Enforcement Section
Environment & Nat. Resources Div. U.S.
Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C.  20044-7611
202-514-2840
Kenneth.long@usdoj.gov
ATTORNEY-IN-CHARGE

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

By:     /s/ Jimmy A. Rodriguez
JIMMY A. RODRIGUEZ
Senior Litigation Counsel
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite #2300
Houston, Texas 77002
Telephone: 713 567-9532
Facsimile: 713 718-3303
jrodriguez3@usa.doj.gov
LOCAL CO-COUNSEL

ATTORNEYS FOR THE UNITED STATES

31

OF COUNSEL:

HANNAH LEONE
Attorney-Advisor
Region III
U.S. Environmental Protection Agency
Office of Regional Counsel
Mail Code 3RC30
1600 John F. Kennedy, Blvd.
Philadelphia, PA 19103
215-814-2673