**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO: 4:23-cv-3232 |
| v. ) | |
| ) | |
| TADANO LIMITED, ) | |
| ) | |
| TADANO FAUN GMBH, ) | |
| ) | |
| TADANO AMERICA CORPORATION,    and ) | |
| ) | |
| TADANO MANTIS CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

CONSENT DECREE

I. BACKGROUND ................................................................................................................. 1
II. JURISDICTION AND VENUE ........................................................................................ 3
III. APPLICABILITY ............................................................................................................ 3
IV. DEFINITIONS ................................................................................................................. 4
V. CIVIL PENALTY ............................................................................................................. 6
VI. APPROVAL OF DELIVERABLES ................................................................................ 7
VII. MITIGATION ................................................................................................................ 8
VIII. REPORTING REQUIREMENTS ................................................................................ 12
IX. STIPULATED PENALTIES .......................................................................................... 14
X. FORCE MAJEURE ......................................................................................................... 17
XI. DISPUTE RESOLUTION .............................................................................................. 19
XII. INFORMATION COLLECTION AND RETENTION .................................................. 21
XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ..................................... 23
XIV. COSTS .......................................................................................................................... 24
XV. NOTICES ....................................................................................................................... 25
XVI. EFFECTIVE DATE ...................................................................................................... 26
XVII. RETENTION OF JURISDICTION ............................................................................. 27
XVIII. MODIFICATION ....................................................................................................... 27
XIX. TERMINATION ........................................................................................................... 27
XX. PUBLIC PARTICIPATION .......................................................................................... 28
XXI. SIGNATORIES/SERVICE .......................................................................................... 29
XXII. INTEGRATION .......................................................................................................... 29
XXIII. HEADINGS ................................................................................................................ 29

XXIV. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION.......................................................... 30
XXV. FINAL JUDGMENT............................................................................................................... 30
XXVI. APPENDICES ...................................................................................................................... 30

## I. BACKGROUND

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendants Tadano Limited ("Tadano Ltd."), Tadano Mantis Corporation ("Tadano Mantis"), Tadano Faun GmbH ("Tadano Faun"), and Tadano America Corporation ("Tadano America") (collectively "Tadano Group" or "Defendants"), violated Sections 203(a) and 213(d) of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7522(a) and 7547(d), and the regulations promulgated pursuant to Section 213 of the Act, 42 U.S.C. § 7547, and codified at 40 C.F.R. Parts 1039 and 1068.

The Complaint alleges that Defendants manufactured and illegally imported, sold, offered for sale, and/or introduced, or delivered for introduction into United States commerce certain nonroad compression-ignition engines ("nonroad engines") in heavy construction equipment (one type of "nonroad vehicle") that were not covered by the certificates of conformity required under Sections 203(a)(1) and 213(d) of the Act, 42 U.S.C. §§ 7522(a)(1) and 7547(d), and 40 C.F.R. § 1068.101, and that did not qualify for an exemption from that certification requirement under the Transition Program for Equipment Manufacturers ("TPEM") regulations at 40 C.F.R. § 1039.625 (identifying nonroad vehicles as "equipment"). The Complaint also alleges that Defendants failed to meet "Ultra Low Sulfur Fuel Only" labeling requirements of 40 C.F.R. § 1039.135(e) in violation of Section 203(a)(4) of the Act, 42 U.S.C. § 7522(a)(4), and 40 C.F.R. § 1068.101(a)(1), and that Defendants violated reporting requirements, including annual reporting and import declaration form requirements, in violation of Sections 203(a)(2) and 213(d) of the Act, 42 U.S.C. §§ 7522(a)(2) and 7547(d), and 40 C.F.R. §§ 1068.101(a)(2) and 1068.301(d).

In 2017, Defendants self-reported potential violations of the Act to EPA after receiving an inquiry earlier in 2017 from EPA seeking clarifications related to Defendants' TPEM program registrations and the relationship between the several Tadano companies.  EPA's inquiry prompted Defendants to revisit their participation in the TPEM program and prompted Defendants to retain an outside law firm to conduct a review.  After preliminary results of that review showed potential violations of the Act and TPEM, Defendants initiated their self-report.

On August 11, 2020, EPA issued an information request under Section 208 of the Act, 42 U.S.C. § 7542, seeking additional information on Defendants' compliance with Sections 203(a) and 213(d) of the Act, and the applicable regulations for nonroad engines and nonroad vehicles at 40 C.F.R. Parts 1039 and 1068.  Defendants provided additional information to EPA in response to that request.

Defendants represent that, concurrently with the government's investigation and review prompted by the self-report, Defendants developed and implemented an updated compliance plan designed to ensure better future compliance with regulations governing manufacturers and importers of  nonroad vehicles in the United States, including the environmental regulations.

Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Sections I (Background) and II (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED,

ORDERED, AND DECREED as follows:

## II. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 204, 205 and 213(d) of the Act, 42 U.S.C. §§ 7523, 7524 and 7547(d), and over the Parties.  Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a) and Sections 204 and 205 of the Act, 42 U.S.C. §§ 7523 and 7524, because Defendants conduct business in this District and because Tadano America is headquartered in this District.  For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and consent to venue in this judicial district.

2.     For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 203(a)(1), (2) and (4) and 213(d) of the Act, 42 U.S.C. §§ 7522(a)(1), (2), and (4), and 7547(d), and 40 C.F.R. §§ 1068.101(a)(1) and (2).

## III. APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4.     No transfer of ownership or operation of the Defendants or any Defendant, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, the transferor Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the

3         US v. Tadano Ltd

prospective transfer, together with a copy of the proposed written agreement, to EPA, DOJ, and the United States Attorney for the Southern District of Texas, in accordance with Section XV (Notices).  Any attempt to transfer ownership or operation of Defendant(s) without complying with this Paragraph constitutes a violation of this Decree.

5. Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6. In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV. DEFINITIONS

7. Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

"Complaint" means the complaint filed by the United States in this action;

"Consent Decree" or "Decree" means this Decree and all appendices attached hereto (listed in Section XXVI (Appendices));

"Date of Lodging" means the day that the United States gives notice of lodging with the Court of a proposed Consent Decree;

4                US v. Tadano Ltd

"Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

"Defendants" means Tadano Limited, Tadano Mantis Corporation, Tadano Faun GmbH, and Tadano America Corporation;

"DOJ" means the United States Department of Justice and any of its successor departments or agencies;

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" means the definition provided in Section XVI (Effective Date);

"Mitigation Project" and "Project" shall mean a mitigation project as provided in Section VII (Mitigation);

"$NO_x$" shall mean the sum of nitric oxide, nitrogen dioxide, and other oxides of nitrogen originating from combustion-related emissions;

"Paragraph" means a portion of this Decree identified by an Arabic numeral;

"Parties" means the United States and Defendants;

"PM" (particulate matter) is a form of air pollution originating from combustion-related emissions composed of microscopic solids and liquids suspended in air;

"Section" means a portion of this Decree identified by a Roman numeral;

"United States" means the United States of America, acting on behalf of EPA.

V. CIVIL PENALTY

8.     Within 30 Days after the Effective Date, Defendants shall pay, collectively, the total sum of $40,000,000.00 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961, as of the Date of Lodging.  Defendants are jointly and severally responsible for the payment amount.

9.     Defendants shall pay the civil penalty due, together with interest, by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Southern District of Texas after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> Kozo Yoshida
> Executive Officer, Planning and Administration Division
> Email: kozo.yoshida@tadano.com
> Phone: +81-80-2856-0380

on behalf of Defendants.  Defendants may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XV (Notices).

10.     At the time of payment, Defendants shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ in accordance with Section XV (Notices); and (iii) to EPA in accordance with Section XV (Notices); and to the R3 Hearing Clerk at R3_Hearing_Clerk@epa.gov.  Such notice shall state

that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Tadano Ltd., et al,* and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-2-1-12161.

11.     Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating its federal income tax.

## VI. APPROVAL OF DELIVERABLES

12.     <u>Approval of Deliverables</u>.  After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA will in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

13.     If the submission is approved pursuant to Paragraph 12 (a), Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part pursuant to Paragraph 12 (b) or (c), Defendants shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item(s) that EPA determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions, under Section XI (Dispute Resolution).

14.     If the submission is disapproved in whole or in part pursuant to Paragraph 12 (c) or (d), Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item(s), or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is

approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

15.    If a resubmitted plan, report, or other item(s), or portion thereof, is disapproved in whole or in part, EPA may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs.

16.    If Defendants elect to invoke Dispute Resolution as set forth in Section XI (Dispute Resolution) concerning a decision by EPA to disapprove, approve on specified conditions, or modify a deliverable, Defendants shall do so by sending a Notice of Dispute in accordance with Paragraph 51 within 30 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

17.    Any stipulated penalties applicable to the original submission, as provided in Section IX (Stipulated Penalties), accrue during the 45 Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

## VII. MITIGATION

18.    <u>Mitigation Project</u>.  As set forth in this Section and Appendix A, Defendants shall mitigate estimated excess $NO_x$ and PM emissions from the alleged nonroad engines in Tadano Group's nonroad vehicles not certified to model year standards and either not identified as TPEM or in excess of the TPEM allowance (the "Subject Vehicles")  by completing Mitigation Project(s) to reduce NOx and PM emissions by a similar amount from other nonroad vehicles (e.g., tugboats) located in reasonable proximity to areas where violations causing the

harm occurred (such as Texas Gulf coast ports or other ports of entry for imported Subject Vehicles, Tadano Group distribution facilities, or authorized Tadano Group dealerships or service centers in the United States), or where Subject Vehicles have come to be located and operated. Defendants have selected and EPA has found satisfactory, subject to EPA's review and approval of the Mitigation Project Plan (as defined in Paragraph 19), the Mitigation Project identified in Appendix A.

19.     Within 30 Days after the Effective Date, Defendants shall submit, for EPA review and approval pursuant to Section VI (Approval of Deliverables), a plan for implementation of the Mitigation Project ("Mitigation Project Plan"). Defendants may, but are not required to, begin implementation of the Mitigation Project prior to the Effective Date but not earlier than the Date of Lodging. Defendants bear all risks that, should they implement the Mitigation Project prior to the Date of Lodging or before Mitigation Project Plan approval, Defendants may not receive credit for actions taken prior to the Date of Lodging or Mitigation Project Plan approval.

a.     Mitigation Project Plan. The Mitigation Project Plan shall include the following information for each Project:

(1)   A plan and schedule for implementing the Mitigation Project described in Appendix A;

(2)   A summary-level budget for the Mitigation Project; and

(3)   A detailed description of the anticipated $NO_x$ and PM emission reduction estimates for the Mitigation Project.

20.     Reports and Project Completion. Defendants shall provide progress and completion reports for the Mitigation Project and other information as set forth in Section VIII (Reporting Requirements) and Appendix A. By no later than 36 months from the Effective Date, Defendants shall complete the Mitigation Project.

21.    Additional Mitigation Projects.  If for any reason Defendants are not able to implement the Mitigation Project identified in Appendix A within the time required, or in any event that Defendants wish to undertake a Mitigation Project(s) other than that described in Appendix A, then Defendants shall select, subject to EPA approval, one or more other Mitigation Project(s) to satisfy the minimum mitigation requirements of this Section.  Within ninety (90) days after Defendants determine that they cannot complete the Mitigation Project identified in Appendix A, or after the 36-month deadline for completion of the Mitigation Project(s) identified in Appendix A has passed without satisfactory completion, whichever is sooner, Defendants must submit for approval one or more additional projects that, in total with any projects completed under Appendix A, will mitigate estimated excess NOx and PM emissions of the Subject Engines.

22.    Upon approval, conditional approval, or partial approval by the United States of a Mitigation Project Plan for the additional Mitigation Project(s), Defendants shall implement the additional Mitigation Project(s) according to the schedule for implementation contained therein.  Such a schedule for implementation shall supersede the schedule for implementation contained in Paragraph 20 and shall become enforceable under this Decree.  Nothing in this Consent Decree shall be interpreted to prohibit Defendant from completing the Mitigation Project(s) ahead of schedule.

23.    Defendants shall continue to implement the Mitigation Project outlined in Appendix A, or the additional Mitigation Project(s), as applicable, and submit semi-annual reports under Section VIII (Reporting Requirements) until the United States agrees in writing that Defendants have provided satisfactory evidence that the mitigation objectives have been achieved consistent with the criteria described in the approved Mitigation Project Plan.

24.    Permits.  Where any compliance obligation under this Consent Decree requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendants may seek relief under the provisions of Section X (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

25.    Mitigation Project Certifications.  With regard to the Mitigation Project(s), Defendants certify the truth and accuracy of each of the following:

a.    That, as of the date of executing this Decree, Defendants are not required to perform or develop the Mitigation Project(s) by any federal, state, or local law or regulation and are not required to perform or develop the Mitigation Project(s) by agreement, grant, or as injunctive relief awarded in any other action in any forum;

b.    That the Mitigation Project(s) is not a Mitigation Project(s) that Defendants were planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

c.    That Defendants have not received and will not receive credit for the Mitigation Project(s) in any other enforcement action; and

d.    That Defendants shall neither generate nor use any pollutant reductions from the Mitigation Project(s) as netting reductions, pollutant offsets, or to apply for, obtain, trade, or sell any pollutant reduction credits.

## VIII. REPORTING REQUIREMENTS

26.    Within 10 Days after the Effective Date, Tadano Group shall submit for EPA review a list of deadlines included in this Consent Decree.  For any deliverable required by the Consent Decree, the list shall indicate whether EPA approval is required.  The list shall be in substantially the same form as Appendix B and shall be submitted in an electronic format (e.g., unlocked spreadsheet or similar format agreed to by the Parties).  Within 10 Days of modification of any deadline under this Consent Decree, Tadano Group shall provide an updated list reflecting changes to the future schedule.  In the event of conflict between the list generated pursuant to this Paragraph and the Consent Decree, the Consent Decree shall control.

27.    Defendants shall submit the following reports to EPA, and DOJ at the addresses set forth in Section XV (Notices):

a.    By July 31st and January 31st of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XIX (Termination), Defendants shall submit by email to the addresses in Section XV (Notices), below, a semi-annual report for the preceding six months that includes the status of the Mitigation Project(s) with an explanation of any problems encountered or anticipated, together with implemented or proposed solutions.  By no later than 60 Days following the completion of a Mitigation Project required under this Consent Decree, Defendants shall submit to EPA for approval a Mitigation Project Completion Report.  All Reports shall include the information required in Appendix A.

b.    The reports shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If

any Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, that Defendant shall notify DOJ and EPA of such violation and its likely duration, in writing, within ten business days of the Day that Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, the Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section X (Force Majeure).

28.     Whenever any violation of this Consent Decree or any other event affecting a Defendant's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendant(s) shall notify EPA by telephone or by email using the Section XV (Notices) contact information as soon as possible, but no later than 24 hours after Defendant(s) first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

29.     Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that

13          US v. Tadano Ltd

there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

30.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

31.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

32.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX. STIPULATED PENALTIES

33.     Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

34.     <u>Late Payment of Civil Penalty</u>.  If Defendants fail to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $12,000 per Day for each Day that the payment is late.

35.     <u>Mitigation Milestones.</u>

a.     The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Section VII (Mitigation):

14                US v. Tadano Ltd

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,500 | 1st through 14th Day |
| $ 3,000 | 15th through 30th Day |
| $ 5,000 | 31st Day and beyond |

36.     Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VIII (Reporting Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th Day |
| $ 2,000 | 15th through 30th Day |
| $ 3,000 | 31st Day and beyond |

37.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

38.     Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

39.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

40.     Stipulated penalties shall continue to accrue as provided in Paragraph 37, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

15                US v. Tadano Ltd

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

41.      Defendants shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 9 and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

42.      If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

43.      The payment of penalties and interest, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

44.      Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable law, including but not limited to an action against Defendants for statutory penalties, additional

16               US v. Tadano Ltd

injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

X. FORCE MAJEURE

45.      "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

46.      If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice by telephone or by email to EPA in accordance with Section XV (Notices), within 72 hours of when Defendants first knew that the event might cause a delay. Within seven Days thereafter, Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an

17          US v. Tadano Ltd

endangerment to public health, welfare, or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

47. If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

48. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

49. If Defendants elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, the Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 45 and

46. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI. DISPUTE RESOLUTION

50. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

51. <u>Informal Dispute Resolution</u>. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send DOJ and EPA a written Notice of Dispute. Such Notice of Dispute shall clearly state the matter in dispute. The period of informal negotiations shall not exceed 45 Days from the date the dispute arises unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 45 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

52. <u>Formal Dispute Resolution</u>. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

53.     The United States will send Defendants its Statement of Position within 45 Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position is binding on Defendants unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

54.     Judicial Dispute Resolution.  Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute.  The motion must be filed within 14 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

55.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

56.     Standard of Review

a.     Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 52 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable

US v. Tadano Ltd

principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 52, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

57.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 40.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII. INFORMATION COLLECTION AND RETENTION

58.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right to request information from Defendants to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.    obtain documentary evidence, including photographs and similar data; and

d.    assess Defendants' compliance with this Consent Decree.

59.     Upon receipt of a request for information made according to the preceding Paragraph, Defendants shall respond with the requested information within 30 Days.  Failure to do so shall constitute a violation of this Consent Decree.

60.     Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate to Defendants' performance of its obligations under Section VI of this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

61.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.  Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege, or any other privilege recognized by federal law.  If Defendants assert such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document,

record, or information; and (f) the privilege asserted by Defendants.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

62.     Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

63.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

64.     This Consent Decree resolves the civil claims of the United States for all of the violations alleged in the Complaint filed in this action through the Date of Lodging.

65.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 64.

66.      In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon

the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 64.

67. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7522, or with any other provisions of federal, state, or local laws, regulations, or permits.

68. This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

69. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV. COSTS

70. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees)

24　　　US v. Tadano Ltd

incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

XV. NOTICES

71.    Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by email, addressed as follows:

As to the United States:  Use DOJ and EPA addresses below

| As to DOJ by email: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-12161<br>EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice |
|---|---|
| As to EPA by email: | R3_ORC_mailbox@epa.gov<br><br>Hannah Leone<br>Office of Regional Counsel<br>U.S Environmental Protection Agency, Region 3<br>(215) 814-2673<br>Leone.Hannah@epa.gov<br><br>Kim Laufenberg<br>Enforcement and Compliance Assurance Division<br>U.S Environmental Protection Agency, Region 3<br>(215) 814-2265<br>Laufenberg.Kim@epa.gov |
| As to Defendants: | Brian Mims<br>Chief Compliance Officer and General Counsel<br>Tadano America Corporation<br>(281) 869-5923<br>brian.mims@tadano.com |

25                US v. Tadano Ltd

Kozo Yoshida
Executive Officer, Planning and Administration
Division
Tadano Ltd.
kozo.yoshida@tadano.com
+81-80-2856-0380
Noriaki Yashiro
Director and Managing Executive Officer
Tadano Ltd.
+81-80-8630-2635
noriaki.yashiro@tadano.com

David Gotsill
Compliance Officer & General Counsel
Tadano Ltd.
+81-80-2856-0419
david.gotsill@tadano.com

72.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

73.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI. EFFECTIVE DATE

74.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendants hereby agree that they shall be bound to perform duties scheduled to occur prior to the Effective Date (see Paragraphs 19 and 20 of Section VII (Mitigation)).  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to

enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII. RETENTION OF JURISDICTION

75.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Section XI (Dispute Resolution) and Section XVIII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. MODIFICATION

76.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

77.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 56, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX. TERMINATION

78.    After Defendants have completed the requirements of Section VII (Mitigation) and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that

Defendants have satisfied those requirements, together with all necessary supporting documentation.

79.     Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

80.     If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section XI (Dispute Resolution).  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XX. PUBLIC PARTICIPATION

81.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

28          US v. Tadano Ltd

## XXI. SIGNATORIES/SERVICE

82.     Each undersigned representative of Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice identified on the DOJ signature page below, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

83.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII. INTEGRATION

84.     This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, concerning the subject matter of the Decree herein.

## XXIII. HEADINGS

85.     Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXIV. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

86.     For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the

Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 162-21(b)(2), performance

of Paragraphs 18-25 of Section VII (Mitigation) is restitution, remediation, or required to come

into compliance with law.

## XXV. FINAL JUDGMENT

87.     Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States and Defendants.

## XXVI. APPENDICES

88.     The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the "Proposed Mitigation Project"; and

"Appendix B" is the "Deliverables Template".

Dated and entered this 16th day of October, 2023

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE
United States District Court for Southern District of Texas

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


KENNETH G. LONG
Senior Attorney
D.C. Bar No. 414791
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC  20044-7611
Ph (202) 514-2840
Fax: (202) 616-6548
Kenneth.long@usdoj.gov
ATTORNEY-IN-CHARGE



ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

/s/ Jimmy A. Rodriguez
JIMMY A. RODRIGUEZ
Senior Litigation Counsel
Assistant United States Attorney
Southern District of Texas
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
 Houston, Texas
Tel: (713) 567-9532
jrodriguez3@usa.doj.gov
LOCAL CO-COUNSEL

FOR THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY:

DAVID
UHLMANN

Digitally signed by DAVID
UHLMANN
Date: 2023.08.30 15:41:07
-04'00'

DAVID M. UHLMANN
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

ROSEMARIE A. KELLEY
Director, Office of Civil Enforcement
U.S. Environmental Protection Agency,
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

MARY E. GREENE
Director, Air Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency,
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

MARK J. PALERMO
Chief, Vehicle and Engine Enforcement Branch
Air Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency,
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

(CONTINUED) FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:


ADAM ORTIZ

Digitally signed by ADAM ORTIZ
Date: 2023.08.15 15:48:45 -04'00'

ADAM ORTIZ
Regional Administrator
U.S. Environmental Protection Agency, Region 3


CECIL RODRIGUES

Digitally signed by CECIL RODRIGUES
Date: 2023.08.12 10:51:45 -04'00'

CECIL RODRIGUES
Regional Counsel
U.S. Environmental Protection Agency, Region 3


HANNAH LEONE

Digitally signed by HANNAH LEONE
Date: 2023.08.11 16:21:20 -04'00'

HANNAH G. LEONE
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 3
Office of Regional Counsel


32-1    US v. Tadano Ltd.

FOR TADANO LIMITED:

TOSHIAKI UJIIE
President, Chief Executive Officer, and Representative
Director
Tadano Limited

US v. Tadano Ltd  06.5.23

FOR TADANO MANTIS CORPORATION:

SHINICHI IIMURA
Chairman and Chief Executive Officer
Tadano Mantis Corporation

FOR TADANO FAUN GMBH:

KENICHI SAWADA
Chief Executive Officer
Tadano Faun GmbH

FOR TADANO AMERICA CORPORATION:

_____

DEAN BARLEY
President and Chief Executive Officer
Tadano America Corporation

**APPENDIX A**

<u>PROPOSED MITIGATION PROJECT</u>

*TUGBOAT DIESEL ENGINE REPLACEMENT PROJECT*

1.  In accordance with Section VII (Mitigation) of the Consent Decree, Defendants shall complete one or more projects (the "Mitigation Project(s)") to mitigate the NOx and PM emissions from nonconforming engines.  This Appendix describes a Mitigation Project proposed by Defendants for the Permanent Destruction of diesel engines currently in-service on a tugboat ("Qualifying Tugboat").  The provisions set forth in this Appendix are in addition to the provisions set forth in the Consent Decree.

2.  Defendants shall contribute funds to a vessel and engine replacement project sited at the Port of Port Arthur, Texas.  The funds will go toward the replacement of the Qualifying Tugboat and the Permanent Destruction of its two 2,150 horsepower ("hp") uncontrolled propulsion engines from Model Year ("MY") 1976 and two 133 hp Tier 3 auxiliary generation sets ("gen-sets") from MY 2021 ("Qualifying Tugboat Engines").  The Qualifying Tugboat will ultimately be replaced with a new tugboat with two 2,550 hp Tier 4 propulsion engines from MY 2022 (or later) and two 150 hp Tier 3 auxiliary gen-sets from MY 2022 (or later).

3.  The purpose of this Mitigation Project is to mitigate NOx and PM emissions through Defendants' Permanent Destruction (as further described in Paragraph 4 below) of the Qualifying Tugboat Engines, thereby rendering the engines inoperable and/or incapable of being returned to service.

4.  For purposes of this Appendix, "Owner" shall mean: any person (natural or entity) who at the time of this Mitigation Project owned, possessed, or controlled title to the Qualifying

Tugboat.

5. For purposes of this Appendix, "Permanently Destroy" (or "Permanent Destruction") shall mean to destroy an engine's crankshaft, cylinder head and liner, and engine block using one of the following methods listed in subparagraphs (a) through (c) below. Nothing herein prohibits Defendants from recycling or reusing engine parts and components that are not the crankshaft, cylinder head and liner, and engine block, and/or from recycling or reusing the non-engine portion of the tugboat and its parts and components:

a. Remove (and dispose of appropriately) the engine oil from the crankcase, replace the oil with a 40 percent solution of sodium silicate ($SiO_2/Na_2O$ with a weight ratio of 3.0 or greater). Run the engine at a low speed (approximately 2,000 rpm) until the engine stops. After allowing the engine to cool for an hour, try to start the engine, if the vehicle or engine contains a battery and that battery is charged and the engine will not operate at idle, the procedure is complete. If the engine starts, run the engine at a low speed (approximately 2,000 rpm) until the engine stops and then try to start the engine again after allowing the engine to cool for an hour. Repeat steps in this process until the engine will not operate. Remove (and dispose of appropriately) any remaining fuel in accordance with applicable law;

b. Remove (and dispose of appropriately) all oil and fuel from the device. Using a drill bit of no less than 3/8 inch or a cutting torch: drill or cut a hole through the lower crankcase of the engine so that it no longer retains oil. Drill or cut a hole through each cylinder head into the combustion chamber. Drill or cut a hole through the cylinder or cylinder block through the cylinder liner; or

c. Remove (and dispose of appropriately) all oil and fuel from the device.

2    US v. Tadano Ltd

Compact or crush the crankshaft, cylinder head and liner, and engine block to render them useless.

6. The amount of NOx and PM mitigated by the Mitigation Project described in this Appendix shall be determined in the following manner: Defendants shall calculate the estimated emission reductions of NOx and PM mitigated by utilizing the EPA's Diesel Emission Quantifier (DEQ) found at: Diesel Emissions Quantifier | Diesel Emissions Reduction Act (DERA) | US EPA.

7. In accordance with this Appendix, Defendants are responsible for the Permanent Destruction of the Qualifying Tugboat Engines, and in doing so will be deemed to fully mitigate the excess NOx and PM emissions from nonconforming engines in the United States, as claimed by the United States.

8. In addition to the requirements of Section VIII (Reporting Requirements) of the Consent Decree, the semi-annual Mitigation Project Progress Reports and Mitigation Project Completion Report must include the information identified in subparagraphs (a) through (e) below. However, if Defendants select the Mitigation Project identified in this Appendix, information identified in subparagraph (c) is not required.

a. A narrative description of the status of the Mitigation Project and Defendants' progress towards meeting the requirements of Section VII (Mitigation);

b. A statement that the Tugboat Diesel Engine Replacement Project satisfies the requirements of Section VII (Mitigation) and this Appendix;

c. A description of Defendants' efforts to satisfy the requirements of Paragraph 18 of the Consent Decree, including but not limited to, the following information:

(1)    An estimate of the total amount of NOx and PM emissions reduced (in tons) achieved through mitigation performed as measured over the remaining useful life of the Qualifying Tugboat Engines; and

(2)    Any additional information defendant believes should be brought to the attention of EPA.

d.    A certification pursuant to Paragraph 25 of the Consent Decree;

e.    A spreadsheet of the following data and information, when known, in native Excel format:

(1)    The name, address, telephone number, and email address of the Owner of the Qualifying Tugboat for this Mitigation Project;

(2)    If different from the zip code required by subparagraph (e)(1), above, the zip code where the Qualifying Tugboat is stored in the ordinary course;

(3)    The Qualifying Tugboat and its replacement for all associated equipment and engines: model years, manufacturers, type of engines (i.e., propulsion or auxiliary), engine tiers, horsepower of each engine, displacement (liters/cylinder), semi-annual fuel consumption (gallons), VINs (or serial or other unique identification number), semi-annual hours of operation, and remaining useful life of the Qualifying Tugboat Engines; and

(4)    The amount paid to, or value exchanged with, the Owner of the Qualifying Tugboat, or the Owner's agent or third-party intermediary.

f.    Defendants shall submit with its Mitigation Completion Report, in addition

4    US v. Tadano Ltd

to the information set forth above, (pursuant to Section VI (Approval of Deliverables) of the Consent Decree) and shall retain (subject to Section XII (Information Collection and Retention) of the Consent Decree) photographic evidence and a written explanation of the Permanent Destruction of the Qualifying Tugboat Engines.  The written explanation shall include at least:

(1)    The method of Permanent Destruction selected under this Appendix of the Consent Decree;

(2)    The location and the date on which the Qualifying Tugboat Engines were Permanently Destroyed; and

(3)    The names and titles of the person(s) who were responsible for the Permanent Destruction of the Qualifying Tugboat Engines.

**APPENDIX B:**

**DELIVERABLES TEMPLATE**

| Field | Instructions |
|---|---|
| Deliverable/Obligation | This should contain a description of the specific deliverable or obligation (a single line of succinct text for plans, reports, data, penalty payments and any other item due under the consent decree). In the case of repeating or ongoing deliverables/obligations (e.g., annually recurring deliverables), enter each repeating or ongoing deliverable/obligation as a distinct line item. For consent decrees that cover multiple facilities, a separate deliverable/obligation line should be included for each item (e.g., a plan, a report) that must be submitted individually for each facility and the deliverable/obligation name should be provided in the following format: "Facility Name – Deliverable/Obligation Name". If a single item (e.g., a plan, a report) is required for all facilities, a single, aggregated deliverable/obligation line should be included for this one item and a note should be included in the "Comments" field indicating that this item addresses all of the facilities. |
| Due Date | Enter the due date for the deliverable in MM/DD/YYYY format. |
| Comments | Enter any comments or details specific to the deliverable/obligation. If the exact deliverable/obligation due date is not known (e.g., it is contingent upon the completion of another deliverable), enter a description for the deliverable/obligation due date. |
| Approval Required? | Enter "Yes" or "No" to indicate whether the deliverable/obligation requires written approval by EPA. |
| Facility Name | Enter the facility name associated with the deliverable/obligation. The facility name will be consistent across all deliverables/obligations for single-facility consent decrees.<br>For multi-facility consent decrees, each deliverable/obligation for each facility must be entered as a separate line and the facility name associated with each deliverable/obligation will be entered accordingly. If the deliverable line pertains to all facilities, leave the Facility Name field blank. |
| Facility State | Select the two-letter acronym (e.g., PA, WV) for the state in which the facility is located If the deliverable line pertains to all facilities, leave the Facility State field blank. |

| Deliverable/Obligation | Due Date | Comments | Approval Required? | Facility Name | Facility State |
|---|---|---|---|---|---|
| [Type Input] | [MM/DD/YYYY] | [Type Input] | [Select "Yes/No"Input] | [Type Input] | [State Abbreviation] |

6      US v. Tadano Ltd